**1UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

In re CASCADIA PARTNERS, LLC,    )    Case No. 10-63442-LYN
                                                              )
           Debtor.    )
                                                            )
                                                             )

## **MEMORANDUM AND ORDER**

This matter comes before the court on a motion by Wells Fargo Bank, N.A., ("Wells Fargo"), successor in interest to Wachovia Bank, N.A. ("Wachovia"), for relief from the automatic stay.  The Debtor-in-Possession, Cascadia Partners, LLC, ("the Debtor") opposes the motion.  The motion will be granted.

### *Jurisdiction*

This court has jurisdiction over this matter.  28 U.S.C. §§ 1334(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A).  Accordingly, this court may render a final order.  This memorandum shall constitute the court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

### *Facts*

The Debtor is a Virginia limited liability corporation.  StoneHaus LLC ("Stonehaus") is the manager and 40% shareholder of the Debtor.  Robert M. Hauser ("Hauser") is the manager of Stonehaus.   The Debtor owns four parcels of land constituting approximately 60.772 acres ("the Real Property").[1]

---

[1] The four parcels are apparently contiguous.

1

The Debtor was founded in 2007 for the purpose of developing and selling lots to residential home builders in a neighborhood known as Cascadia, in Albemarle County, Virginia. On July 25, 2007, the Debtor and Wachovia entered into a loan agreement ("the Construction Loan Agreement") and promissory note ("the Promissory Note") in the original principal amount of $6,300,000.00. Also on July 25, 2007, the Debtor executed a Deed of Trust, Assignment of Rents and Security Agreement (the "Deed of Trust") to secure the debt. On that same date, Hauser executed a Guaranty Agreement (the "Guaranty"). (The Construction Loan Agreement, the Promissory Note, the Deed of Trust, and the Guaranty are referred to herein as the "Loan Documents"). Pursuant to the Guaranty, Hauser agreed to fully and unconditionally guarantee the Debtor's obligations under the debt arising under the Loan Documents.

Wachovia funded the project through the fall of 2008 but then ceased all further funding. Shortly thereafter, Wachovia declared the Construction Loan Agreement in default. On December 31, 2008, Wachovia notified the Debtor and Hauser by demand letter that each was in default under the Loan Documents. Wachovia made demand for immediate payment of all outstanding amounts owed. Neither the Debtor nor Hauser has cured the default.

Wachovia commenced foreclosure proceedings against the Real Property pursuant to the Loan Documents. A foreclosure sale (the "Foreclosure Sale") was scheduled to take place on December 2, 2010.

On December 1, 2010, the Debtor filed a petition initiating the above-styled bankruptcy case. The Debtor scheduled the debt owed to Wachovia at $3,886,274.34. The tax-assessed value of the Real Property is $12,074,100.00. An appraisal commissioned by the Debtor and dated February 10, 2011, estimated the as-is market value of the property at $8,850,000.00. An appraisal commissioned by Wells Fargo and dated April 4, 2011, estimated the as-is market

value of the property at $6,000,000.00. The Debtor scheduled tax liens against the Real Property totaling approximately $264,000.00.

On February 28, 2011, the Debtor filed a plan of reorganization ("the Plan").

On April 11, 2011, Wells Fargo filed a motion for relief from the automatic stay. The Debtor opposes the motion. The matter came on for hearing and was taken under submission by the court.

### *Discussion*

Wells Fargo brings this motion for relief from the automatic stay under Section 362(d)(1) and (d)(3)[2]. Section 362(a) provides that the filing of a petition creates a stay against commencing or continuing certain acts including acts to obtain possession of property of the estate. Section 362(d) provides conditions under which a party may be granted relief from the automatic stay.

The Court need only consider Section 362(d)(3)[3] to grant the motion. Section 362(d)(3)

---

[2] "Section" herein refers to the designated section in the Bankruptcy Code of 1978, as revised and codified in Title 11 of the United States Code.

[3] Section 362(d)(3) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . –

. . . .

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within the 90- day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later –
(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
(B) the debtor has commenced monthly payments that –
(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real

3

provides that a single asset real estate debtor must either (1) file a plan of reorganization within 90 days of the date of petition that has a reasonable possibility of being confirmed within a reasonable time or (2) commence payments to the secured creditor that are in an amount equal to interest at the nondefault contract rate on the value of the creditor's interest in the real estate.

The parties agree that the Debtor is a "single asset real estate" debtor.[4] The Debtor has made no post-petition payments to Wells Fargo. The Debtor filed the Plan on the 89th day after it filed its petition. The issue, then, is whether the Plan has a reasonable possibility of being confirmed in a reasonable period of time.

After observing that the language "a reasonable possibility of being confirmed within a reasonable period of time" is nearly identical to the standard set forth by the Supreme Court in United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988), a West Virginia Bankruptcy Court reasoned:

> [A]djudicating a relief from stay motion under § 362(d)(3)(A) is not to be a mini confirmation hearing. E.g., In re LDN Corp., 191 B.R. 320, 325 (Bankr.E.D.Va.1996) ("In the context of relief from stay litigation, the analysis of the potential for a successful reorganization is not the same as the standard employed at a confirmation hearing."). At a confirmation hearing, a debtor must prove its entitlement to confirm a plan under 11 U.S.C. § 1129 by a preponderance of the evidence . . . must demonstrate that the confirmation of the plan is not "likely" to be filed by liquidation or the need for further financial reorganization. E.g., Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir.1988) (stating that success need not be guaranteed-the possibility that a plan may fail is not fatal-but a plan must be supported by adequate evidence that some reasonable assurance of success exists); In re Featherworks Corp., 25 B.R. 634, 642 (Bankr.S.D.N.Y.1982) ( "As the proponent of the plan, the debtor had the burden of establishing that it met the requirements of the Code"), aff'd 36 B.R. 460 (E.D.N.Y.1984). By comparison, the showing required by a debtor under § 362(d)(3)(A) is only that the plan have a reasonable possibility of being confirmed, which is a lesser

---

estate.

[4] "The term 'single asset real estate' means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental." 11 U.S.C. § 101(51B).

> showing than that required at confirmation. E.g., In re Kent Terminal Corp., 166 B.R. 555, 560 (Bankr.S.D.N.Y.1994) (analyzing a case under § 362(d)(2)(B) and concluding that "[i]n a run of the mill relief from stay motion, a debtor need not satisfy the higher level of scrutiny imposed at a confirmation hearing.... [A]t confirmation .... most courts require that a plan offer a probability of success, rather than a mere possibility."). The terms of § 362(d)(3)(A) have been characterized as "rather vague and hopeful" In re Hope Plantation Group, LLC, No. 07-1171, 2007 Bankr.LEXIS 2381 at *12 (Bankr.D.S.C. June 14, 2007) ("[T]he terms ... 'reasonable possibility' within a 'reasonable time' are rather vague and hopeful terms that require a far lower standard of proof that will be required of the Debtor [at the confirmation hearing].").
>
> In proving a "reasonable possibility" of plan confirmation, the stage of the proceeding assists in the showing a debtor must make: " 'At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable.' " In re National/Northway Ltd. P'ship, 279 B.R. 17, 24 (Bankr.D.Mass.2002) (citations omitted). The court is not aware of any requirement, and will not impose one, that the plan filed at the time the stay relief motion is pending is the only benchmark for determining whether or not stay relief is appropriate; rather, all that is required is that an effective reorganization be "in prospect," Timbers, 484 U.S. at 376, and be attainable within a reasonable period of time.

In re Windwood Heights, Inc., 2008 WL 519410 at 4-5 (Bankr. N.D.W.Va. 2008).

In summary, the standard by which a creditor must demonstrate that the plan does not have a reasonable possibility of being confirmed within a reasonable time is higher than the standard for opposing confirmation.[5] This requirement is met if the creditor can demonstrate that either the debtor is not proceeding to propose a plan of reorganization, the plan as proposed does not have a realistic chance of being confirmed or the proposed plan is patently unconfirmable.[6]

The Plan provides that the Debtor will obtain a $6,052,224.00 ("the Funds") revolving line of credit ("the Union Bank Loan") from Union First Market Bank ("Union Bank") with a maximum loan amount of $4,000,000.00 to implement Phase I of the project, the development of

---

[5] Conversely, in order to successfully counter a motion for relief from the say under Section 362(d)(3), the Debtor need not show that the plan as filed is confirmable by a preponderance of the evidence as would be required at a confirmation hearing.

[6] This standard is presented in a form that is different from the presentation provided in Windwood and Northway solely for the purpose of emphasizing that the burden of proof is on the creditor.

5

107 lots of approximately 330 lots to be developed on the Real Property. The Debtor intends to use the Funds to continue improving the Real Property so that lots may be sold to NVR, Inc., trading as Ryan Homes ("NVR"), a residential homes builder, pursuant to the terms of an agreement between the Debtor and NVR ("the Lot Purchase Agreement"). Upon approval by the Court, the Debtor would enter into the Lot Purchase agreement with NVR under which NVR would purchase lots as it enters into contracts to build dwelling units with residential home buyers.

The Plan also provides that Union Bank would be granted a first lien priority position pursuant to Section 364(d) ahead of the lien of Wells Fargo. Each lot would be conveyed to NVR free and clear of the lien of Wells Fargo until the Union Bank Loan is paid in full. The Debtor anticipates that Union Bank would be paid in full in late 2012 or early 2013. Thereafter, Wells Fargo would be paid 70% of the sale price of each lot. The remaining 30% of the sale price of each lot will be distributed to the equity holders of the Debtor.[7] The Plan asserts that Wells Fargo will be paid in full with interest at the rate of 4.5% per annum within five years from the effective date of the Plan.

The Plan as filed is patently unconfirmable. First, the Debtor has not secured the loan from Union Bank. Second, the Debtor admitted as much at a subsequent hearing on confirmation.

The Debtor has not secured the loan from Union Bank  A court may confirm a plan only if each of the requirements in Section 1129(a) is met. Section 1129(a)(1) provides that the plan must comply with the applicable provisions of title 11. A plan complies with applicable

---

[7] The Debtor asserts in the Plan that the distribution to the equity holders is for the purpose of paying their income tax liabilities.

provisions of chapter 11 of title 11 if it contains what is required for a plan and what is permitted for a plan. See, e.g., Acequia, Inc., v. Clinton, (In re Acequia, Inc.), 787 F.2d 1352 (9th Cir. 1986). Section 1129(a)(1) is interpreted (primarily) as requiring that the plan comply with the provisions of Sections 1122 and 1123(a). See 7 Collier on Bankruptcy §1129.03[3][c] (16th Ed. 2011).

A plan must "provide adequate means for [its] implementation" . . . including the means by which the Debtor will effect "the sale of all or any part of the property of the estate . . ." 11 U.S.C. § 1123(a)(5)(D). As of the date of the hearing on this matter, a date that was more than six months after the petition was filed, the Debtor had not entered into a loan agreement with Union Bank, despite ongoing negotiations that have lasted at least eighteen months. Without the Union Bank Loan, the Debtor will have not have the funds necessary to develop the Real Property. The Union Bank Loan is a critical element of the implementation of the Plan. The Plan does not meet the requirement of Section 1123(a)(5) because it does not provide adequate means for its implementation. As such, the Plan is not confirmable.

Further, at the confirmation hearing on the Debtor's Plan that was held subsequent to the motion for relief, the Debtor reported that the Plan was not ready for confirmation because, among other reasons, no class of creditors had accepted the plan.

### *Conclusion*

The purpose of Section 362(d)(3) is to prevent debtors from holding secured creditors at bay in single asset construction projects.

> Congress expressly attempted to avoid the usual delays experienced in Chapter 11 in single asset real estate cases, which historically have been filed to avoid a foreclosure and in the hope that the debtor can come up with some form of a miracle in order to formulate an acceptable plan. Congress was persuaded that such delays in single asset real estate cases are unwarranted and it passed the amendment to Section 362 in 1994 to provide a means to expedite the potential for relief, unless certain conditions are met.

In re LDN Corp., 191 B.R. 320, 326 (Bankr. E.D.Va. 1996).

The Debtor has made no post-petition payments to Wells Fargo. The Debtor's Plan is patently unconfirmable. No effective reorganization is in prospect. Accordingly, the motion of Wells Fargo for relief from the automatic stay imposed under 11 U.S.C. § 362(a) will be granted.

**ORDER**

The motion of Wells Fargo Bank, N.A., for relief from the automatic stay imposed by 11 U.S.C. § 362(a) shall be and hereby is, granted so that Wells Fargo Bankr, N.A. may commence or continue acts to foreclose on the Real Property of the Debtor.

So ORDERED.

Upon entry of this Order, the Clerk shall forward a copy to the W. Stephen Scott, Esq., counsel for the debtor, John H. Maddock III, Esq., counsel for Wells Fargo Bank, N.A., and the United States trustee.

Entered on this  30th  day of June, 2011.

_____
William E. Anderson
United States Bankruptcy Judge